## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

                                        Crim. No. 20-232(43) (JRT/BRT)
                    Plaintiff,

v.                                  **MEMORANDUM OPINION AND ORDER**
                                    **OVERRULING DEFENDANT'S OBJECTIONS**
                                    **AND ADOPTING THE MAGISTRATE**
ERIC STEPHEN ESHERICK,                 **JUDGE'S REPORT AND**
                    Defendant.          **RECOMMENDATION**

Harry Jacobs, Joseph H. Thompson, and Matthew S. Ebert, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Minneapolis, MN 55415, for plaintiff.

Charles L. Hawkins, **CHARLES HAWKINS LAW OFFICE**, 150 South Fifth Street, Suite 2860, Minneapolis, MN 55402, for defendant.

Defendant Eric Stephen Esherick has been indicted on one count of conspiracy to commit mail fraud and two counts of wire fraud, along with forty-two other defendants in an alleged nationwide fraudulent magazine sales scheme. A search warrant was executed on August 5, 2020 at Esherick's residence in Andover, Minnesota. Esherick seeks suppression of the evidence obtained as a result of that search, which he argues was unconstitutional. Magistrate Judge Becky Thorson heard the motion and recommended that the Motion to Suppress Evidence Obtained Through Illegal Search be denied. Because the search warrant was supported by probable cause and established a sufficient nexus between evidence of criminal activity and a particular place to be

searched, the Court agrees with the Magistrate Judge and will deny Esherick's Motion to Suppress Evidence Obtained Through Illegal Search.

Esherick also filed a Motion to Suppress Confessions, Admissions or Statements made in an interview with two federal agents and an Assistant United States Attorney ("AUSA") on August 5, 2020 in his backyard.  The Magistrate Judge heard the motion and recommended that it be denied.  Because Esherick was not in custody at the time of the interview, the Court agrees with the Magistrate Judge and will deny Esherick's Motion to Suppress Confessions, Admissions, or Statements.

**BACKGROUND**

### I.   FACTUAL BACKGROUND

#### A.  Search Warrant

In 2019 and throughout 2020, law enforcement officers investigated Esherick, along with others, as part of an investigation into a nationwide conspiracy to commit mail and wire fraud in the telemarketing of magazine subscriptions.  On August 3, 2020, Postal Inspector John Western applied for a search warrant of Esherick's current home residence located in Andover, Minnesota.  (Resp. Mot., Ex. E ("Search Warrant"), Dec. 29, 2021, Docket No. 1068-5.)  The Search Warrant was signed and issued by a magistrate Jjudge on August 3, 2020.  (*Id.*)  The affidavit accompanying the Search Warrant is 57 paragraphs long.  (*Id.*)

2

Esherick runs his own magazine company called Quality Readers Services, whose address with the Minnesota Secretary of State is listed as a townhouse in Ramsey, Minnesota. (Search Warrant ¶¶ 8, 60.) This townhouse was, according to US Postal Service records, Esherick's home until March 2020. (*Id.* ¶ 9.) As of March 30, 2020, Esherick lives and receives mail at a residence in Andover, Minnesota, which is the search premises noted in the Search Warrant. (*Id.*) Two days prior to the application for the Search Warrant, an FBI agent surveilled Esherick's Andover residence and confirmed that the two cars in the driveway were registered to Esherick and his wife. (*Id.* ¶ 10.)

The affidavit submitted in support of the Search Warrant explained that in February 2020, Individual M was searched in connection with the nationwide magazine sales fraud investigation and participated in a proffer interview. (*Id.* ¶¶ 55–56.) Individual M stated that Esherick worked at their company for approximately ten years. (*Id.* ¶¶ 58–59.) Individual M also stated that Esherick now runs his own magazine company called Quality Readers Services from his home. (*Id.* ¶ 60.)

On July 14, 2020, Esherick's wife sent an email with the subject line "Test" to co-Defendant John Harbert. (*Id.* ¶ 70.) This email was sent after Esherick had moved to his new residence in Andover, Minnesota. Attached to the email was a 40-page document containing information about customers to whom Quality Readers Services had sold magazines. (*Id.*)

The affidavit stated that, based on the inspection of the evidence in this case, the affiant had reason to believe that computer equipment was used to carry out the scheme and that there is a computer system currently located at the Andover, Minnesota residence.  (*Id.* ¶ 73.e.)  The affiant also stated that based on his experience and training he knows that businesses generally maintain or keep records and that those records are often maintained at the place of business or the owner's residence.  (*Id.* ¶ 4.)  The affiant asserted that, based upon his experience and training, those engaged in fraud schemes often maintain records of assets and financial transactions within their residences.  (*Id.*)

### B.  Esherick's Interview

On August 5, 2020 at 8:00am, law enforcement executed the Search Warrant at Esherick's Andover residence.  (Mar. 3, 2022 Hr'g Tr. ("Hr'g Tr.") at 18–19, May 2, 2022, Docket No. 1192.)  Two special FBI agents approached and knocked on the door—Esherick, his wife, and his son were all at home.  (*Id.* at 20, 23.)  The special agents notified Esherick they had a valid Search Warrant and once the Eshericks agreed to proceed, the agents called up two other agents to clear the residence and start the search.  (*Id.* at 20–23.)  In total, there were six special agents from the FBI, two postal inspectors, and six additional support employees present for the search.  (*Id.* at 19.)  The agents were dressed in casual attire—though they initially wore body armor—and carried firearms, which were never brandished.  (*Id.* at 22.)

Once the search began, Special Agent Berger, who testified before the Magistrate Judge, Special Agent Yarbrough, and AUSA Jacobs separated Esherick from his wife and son. (*Id.* at 24.) The three interviewed Esherick at a picnic table in his backyard. (*Id.* at 25.) The goal of the interview was to ask Esherick questions and to get his cooperation in the larger investigation. (*Id*. at 24.) The agents advised Esherick that he was not under arrest, that he could stay at the house but could not impede the search warrant, that talking to them was completely voluntary, and he was free to go at any time. (*Id.* at 24–25.) The agents provided Esherick with a summary of the investigation including the magnitude of it and showed him an example of a victim statement. (*Id.* at 27–29.) The agents did not make any promises to him. (*Id.* at 29.) Esherick agreed to speak to the agents. (*Id.* at 31.)

At no point in the interview did the agents raise their voices. (*Id.* at 34.) At one point during the interview, Esherick stated that he thought he should talk to a lawyer. (*Id.* at 50–51.) The agents responded saying it was his personal decision to talk to one and that they could not advise him. (*Id.* at 52.) Esherick did not stop the interview. At another point in the interview, Esherick was allowed to go inside to get a refreshment and use the restroom. (*Id.* at 48.) He was accompanied by a law enforcement agent for safety reasons. (*Id.*) Special Agent Berger testified that the interview lasted approximately one to two hours. (*Id.* at 32.) At the end of the interview, Esherick asked whether he would be charged and was told he probably would get charged but that the decision had not yet

been made.  (*Id.* at 34.)  The agents did not arrest Esherick at the conclusion of the interview.

## II.   PROCEDURAL HISTORY

Esherick was charged on October 20, 2020 with one count of conspiracy to commit mail fraud and two counts of wire fraud, along with forty-two other defendants. (Indictment, Oct. 20, 2020, Docket No. 15.)  Esherick filed a Motion to Suppress Evidence Obtained Through Illegal Search and a Motion to Suppress Confessions, Admissions or Statements Made in the Nature of Confessions Made by the Defendant.  (Mot. Suppress Evidence, Nov. 16, 2021, Docket No. 934; Mot. Suppress Confessions, Nov. 16, 2021, Docket No. 935.)  The Magistrate Judge took the motions under advisement and issued a Report and Recommendation ("R&R") recommending that both motions be denied. (R&R, May 31, 2022, Docket No. 1204.)  Esherick has now filed objections to the R&R. (Obj. R&R, June 28, 2022, Docket No. 1217.)

## ANALYSIS

## I.   STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may "serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b).  "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections."  *Mayer v. Walvatne*, No. 07-1958, 2008 WL 4527774, at *2 (D. Minn.

Sept. 28, 2008).  For dispositive motions, the Court reviews de novo a "properly objected to" portion of an R&R.  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to de novo review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

## II.    DISCUSSION

Esherick raises four objections to the R&R.  First, Esherick objects to the conclusion that the information in the Search Warrant established a nexus between the place to be searched and criminal activity attributed to Esherick.  Second, Esherick objects to the conclusion that the *Leon* good-faith exception applies to the Search Warrant.  Third, Esherick objects to the conclusion that the Search Warrant was supported by probable cause and his statements are not fruit of the poisonous tree.  And last, Esherick objects to the conclusion that he was not in custody during the August 5, 2020 interview.

### A. Nexus

Before a search warrant may be issued, there must be evidence of a nexus between the contraband and the place to be searched.  *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000).  There must be a "fair probability" that evidence of criminal activity will be found in a particular place.  *Id.*  "The requisite nexus . . .  is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." *United States v. Etheridge*, 165 F.3d 655, 657 (8th Cir. 1999).

7

Esherick asserts that the Search Warrant failed to establish a nexus because there was no evidence that he was running Quality Readers Services out of his new residence in Andover. Upon review of the Search Warrant, the Court agrees with the Magistrate Judge that a nexus was sufficiently established. Individual M was familiar with Esherick and stated that Esherick ran Quality Readers Services from his home. (Search Warrant ¶ 60.) This was confirmed by the fact that Quality Reader Services had listed its address as Esherick's old residence. (*Id.* ¶¶ 7–9.) After Esherick moved, evidence showed that his wife sent emails to a co-defendant containing documents related to the fraudulent magazine sales scheme. (*Id.* ¶ 70.) This indicates that Esherick continued to run his business from his new home.

The affiant's knowledge and experience also underscores the conclusion that a nexus was present. The affiant stated that he was aware that computer equipment was used to carry out the scheme and he had reason to believe a computer system was located at the Andover residence. (*Id.* ¶ 73.e.) Furthermore, based on the affiant's experience and training he knows that records associated with a business are generally kept and maintained at a place of business or a residence and that individuals who commit fraud often maintain records of their assets and financial transactions within their residence. (*Id.* ¶ 4.)

The evidence in the Search Warrant sufficiently described the link between Esherick and Quality Reader Services, information showing that Esherick worked out of

his home, and that he continued to work out of his new home after he moved.  It also linked Esherick to the fraudulent magazine sales scheme and detailed how personal financial transaction records may be located in his home.  Based upon the totality of the evidence in the Search Warrant, there was a "fair probability" or a "logical likelihood" that evidence of the fraudulent magazine sales scheme would be found at the Andover residence.

The Search Warrant established a nexus between evidence of a crime and a particular place and was supported by probable cause.  The Court will, therefore, overrule Esherick's objections, adopt the Magistrate Judge's recommendation, and deny Esherick's Motion to Suppress the search warrant of his Andover residence.

### B.  *Leon* Good-Faith Exception

Even if the Search Warrant was not supported by probable cause, the good-faith exception to the exclusionary rule, established in *United States v. Leon*, is applicable here. Under the *Leon* good-faith exception, evidence obtained pursuant to a warrant later determined to be invalid under the Fourth Amendment is admissible if the executing officer's reliance on the issued warrant, and belief that the warrant was valid, were reasonable.  *United States v. Leon*, 468 U.S. 897, 921–24 (1984).  The good-faith exception does not apply if (1) the judge was misled by statements the affiant knew or would have known were false; (2) the magistrate wholly abandoned their judicial role; (3) the affidavit is so lacking in indicia or probable cause as to render an officer's belief entirely

unreasonable; or (4) the warrant is so facially deficient that an executing officer cannot reasonably presume it to be valid. *United States v. Lindsey*, 284 F.3d 874, 878 (8th Cir. 2002).

Esherick argues that the warrant was so facially deficient that Inspector Western should have reasonably known it was invalid. Esherick relies mainly on the fact that Inspector Western had thirteen years of experience and should have known the warrant was lacking. The Search Warrant was detailed, lengthy, and was issued by a magistrate judge. Simply because Inspector Western has significant experience in his job does not mean it was unreasonable for him to believe the warrant was valid. This is especially so when it was supported by a lengthy and detailed affidavit which included evidence of the entire investigation and specific information linking Esherick and the Andover residence to the fraudulent magazine sales scheme. It is hard to imagine that no reasonable officer would have relied in good-faith on the Search Warrant. As such, the Court finds that the good-faith exception to the exclusionary rule applies here and will overrule Esherick's objection and adopt the Magistrate Judge's recommendation to deny the motion.

C. **Motion to Suppress Statement**

1. **Fruit of the Poisonous Tree**

Esherick claims that his statements should be excluded as fruit of the poisonous tree because the search of his residence was unlawful. Because the Court finds that the Search Warrant was not unlawful, the fruit of the poisonous tree doctrine does not apply

here.  As such, the Court overrules Esherick's objection and adopts the Magistrate Judge's

recommendation on this issue.

### 2. Custody

Esherick challenges the Magistrate Judge's recommendation that the statements

made to investigators on August 5, 2020, should not be suppressed because he was not

in custody for purposes of the Fifth Amendment.  In order for a defendant's statements

made during a custodial interrogation to be admissible, the defendant must be provided

with his *Miranda* warnings prior to questioning.  *Miranda v. Arizona*, 384 U.S. 436, 444

(1966).  A custodial interrogation involves "questioning initiated by law enforcement

officers after a person has been taken into custody or otherwise deprived of his freedom

of action in any significant way."  *Id.*  In determining whether a defendant was in custody

for *Miranda* purposes, "a court looks to the totality of the circumstances confronting the

defendant at the time of the interview, and asks whether a reasonable person in his

position would consider his freedom of movement restricted to the degree associated

with formal arrest."  *United States v. Huether*, 673 F.3d 789, 461 (8th Cir. 2012).

When looking at indicia of custody, the Court may look at the *Griffin* factors: (1)

whether the suspect was informed at the time of questioning that the questioning was

voluntary, they were free to leave, or that they were not under arrest; (2) whether the

suspect possessed freedom of movement; (3) whether the suspect initiated contact or

voluntarily acquiesced to official requests to respond to questioning; (4) whether strong

arm tactics or deceptive stratagems were employed; (5) whether the atmosphere of the questioning was police dominated; and (6) whether the suspect was placed under arrest at the end of questioning. *United States v. Griffin*, 922 F.2d 1343, 1349 (8th Cir. 1990).

It is undisputed here that Esherick was interrogated, the only question to answer, then, is whether the interview with the federal law enforcement agents and the AUSA outside his house was custodial in nature. The Court concludes that it was not. Most of the *Griffin* factors weigh in favor of a finding that Esherick was not in custody when he spoke to the investigators in his backyard.

First, the investigators told Esherick that the interview was completely voluntary, that he was not under arrest, and that he was free to leave at any time. Second, Esherick had freedom of movement. He was allowed to get up from the picnic table and head inside to grab a refreshment and use the restroom. Though he was accompanied by an agent during this time, which would indicate his freedom of movement was restricted, the investigators represented he was accompanied inside the house for safety reasons, presumably because a search was being undertaken inside the home. Esherick did not ask to leave at any other point and no evidence indicates that the agents would not have allowed him to leave.

Third, it is undisputed that Esherick voluntarily agreed to meet with the agents at the picnic table. Fourth, no strong-arm tactics or deceptive stratagems were used. The agents never raised their voices or brandished their weapons. When Esherick asked if he

should get a lawyer, the agents responded that they could not advise him on that decision, and Esherick chose to continue the questioning without a lawyer present. Esherick was questioned in his own backyard near his home. There is no evidence that Esherick was pressured into the interview. Even though Esherick was separated from his wife and son, there is no evidence that Esherick ever asked to be reunited with them or that the agents would have prevented that from happening. Additionally, though Esherick was shown the magnitude of the case against him, this did not transform the nature of the interview into a custodial interrogation.

Fifth, the interview was police dominated in that there were two agents and an AUSA present for the interview and the agents were carrying weapons. This factor, though, is the only one that weighs in favor of finding a custodial interrogation occurred. Lastly, Esherick was not placed under arrest at the end of the interview.

Based on a review of all the factors, the totality of the circumstances shows that a reasonable person in Esherick's position would not consider his freedom of movement restricted to the degree associated with formal arrest. Esherick was not under custody when the agents interviewed him on August 5, 2020, and the fact that he was not read his *Miranda* rights is immaterial. Therefore, the Court will overrule Esherick's objection, adopt the Magistrate Judge's recommendation, and deny Esherick's Motion to Suppress his Statements.

**CONCLUSION**

The Court overrules Esherick's objections to the Magistrate Judge's R&R, adopts the R&R in full, and denies both Esherick's Motion to Suppress Evidence Obtained Through an Illegal Search and Motion to Suppress Confessions, Admissions or Statements Made in the Nature of Confessions Made by the Defendant.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **OVERRULES** Defendant's Objections to the Report and Recommendation [Docket No. 1217], and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 1204]. **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Suppress Evidence Obtained Through Illegal Search [Docket No. 934] is **DENIED**;

2. Defendant's Motion to Suppress Confessions, Admissions or Statements made in the Nature of Confessions made by the Defendant [Docket No. 935] is **DENIED**.

DATED: August 24, 2022
at Minneapolis, Minnesota.

_____
JOHN R. TUNHEIM
United States District Judge